1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   FREEMAN INVESTMENT                     Case No.: 13-CV-2856 JLS (RBB)
12   MANAGEMENT CO., LLC, a Delaware
     Corporation,
                                            **ORDER: (1) DENYING**
13                          Plaintiff,      **DEFENDANT'S MOTION TO**
                                            **DISMISS,**
14   v.                                     **(2) DENYING DEFENDANT'S**
                                            **MOTION TO AMEND, AND**
15   FRANK RUSSELL COMPANY, a               **(3) SETTING HEARING**
16   Washington Company, d/b/a RUSSELL
     INVESTMENT GROUP,                      (ECF Nos. 86, 133, 134, 154, 159, 160,
17                          Defendant.      173, 188)
18

19          Presently before the Court are Defendant Frank Russell Company's 12(b)(1) Motion

20   to Dismiss for Lack of Jurisdiction (MTD, ECF No. 173[1]) and Motion for Leave to Amend

21   Its Answer to Modify Its Affirmative Defenses (Mot. to Amend, ECF No. 86), as well as

22   Plaintiff Freeman Investment Management Co., LLC's Oppositions to (ECF Nos. 212 &

23   217, 97, respectively) and Defendant's Replies in Support of (ECF Nos. 235, 156,

24   respectively) Defendant's motions.  Also pending before the Court are Plaintiff's Motion

25   for Summary Judgment Dismissing Affirmative Defenses of Unclean Hands, Waiver, and

26

27   _____

28   [1] Because Defendant's MTD is filed under seal (*see* ECF No. 182), the public redacted version of
     Defendant's MTD can be found at ECF No. 188.

                                            1

Estoppel (Pl.'s MSJ, ECF No. 133); Defendant's Motion for Summary Judgment (Def.'s MSJ, ECF No. 134[2]); Plaintiff's Motion to Exclude Testimony of Sumanth Addanki and Jeffrey Wurgler (Pl.'s *Daubert* Mot., ECF No. 154); Defendant's *Daubert* Motion to Preclude Opinions of Charles Porten and Certain Opinions of Jeffrey Kinrich (Def.'s *Daubert* Mot., ECF No. 159); and Defendant's Objection and Motion to Set Aside Magistrate Judge's Order Granting in Part and Denying in Part Defendant's CivLR 16.1(f)(1)(B) Motion to Continue Final Pretrial Conference Currently Set for June 9, 2016 (ECF No. 253), all of which are fully briefed.

The Court vacated the hearings on these matters, taking some of them under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  (ECF Nos. 122, 181, 226, 265.)  Having considered the parties' arguments and the law, the Court **DENIES** Defendant's MTD (ECF No. 173), **DENIES** Defendant's Motion to Amend (ECF No. 86), and **SETS A HEARING** on the parties' MSJs (ECF Nos. 133, 134, 160) and *Daubert* Motions (ECF Nos. 154, 159) for <u>August 18, 2016 at 1:30 p.m. in Courtroom 4A</u>.

**BACKGROUND**

**I.    Factual Background**

John Freeman, who has worked in the field of investment management and research for over twenty-five years, founded Plaintiff in 2008.  (First Am. Compl. (FAC) ¶¶ 5–6, ECF No. 18.)  When Mr. Freeman began his employment at Plaintiff, he received a copy of the Freeman Employee Handbook and agreed to its terms.  (Decl. of John Freeman (Freeman Decl.) ¶ 19, ECF No. 212-2.)  The 2009 Freeman Employee Handbook provided that "[a]ny and all inventions created, in whole or in part, during an employee's work hours, or from the use of the company's equipment or facilities, is a 'work for hire' and the property of the company."  (Freeman Decl. Ex. J at 68, ECF No. 212-4 at 26.[3])  Similarly,

---

[2] Because Defendant's MSJ is filed under seal (*see* ECF No. 148), the public redacted version of Defendant's MSJ can be found at ECF No. 160.

[3] Citations to docketed materials refer to the CM/ECF page numbers electronically stamped at the top of each page.  The Court also cites to the public redacted versions of the parties pleadings when possible.

1    "any suggestions, innovations, inventions, or other matters created by an employee on work
2    time or with company tools or property" were "property of the company."  (Freeman Decl.
3    Ex. J at 67, ECF No. 212-4 at 25.)

4        Prior to and after founding Plaintiff, Mr. Freeman did significant research in the area
5    of investment strategies.  (FAC ¶ 7, ECF No. 18.)  This included "conduct[ing] extensive
6    calculations, wr[iting] papers, and prepar[ing] charts and graphs that laid out the
7    advantages of emphasizing volatility as a new investment style, and as a basis for
8    calculating volatility-based indexes to provide a benchmark for tracking stock
9    performance."  (*Id.* at ¶ 8.)

10       In fall 2009 Mr. Freeman contacted Defendant, which also provides investment
11   products and services, to discuss a potential business deal.  (*Id.* at ¶¶ 9–10.)  Because
12   Defendant's representatives assured Plaintiff that Defendant would respect Plaintiff's
13   intellectual property (*id.* at ¶ 11) and signed a non-disclosure agreement (*id.* at ¶ 14),
14   Plaintiff shared the results of its research with Defendant (*id.*).  This included a document
15   titled "Divide and Conquer: A More Efficient Approach to Equity Style" (the White Paper).
16   (*Id.* at ¶ 17.)  The White Paper was written by Mr. Freeman as an employee of Plaintiff and
17   using an office, computer, and research and data from subscriptions provided by Plaintiff.
18   (Freeman Decl. ¶ 9, ECF No. 212-2.)

19       After several months spent learning the details of Plaintiff's research and strategies,
20   Defendant informed Plaintiff that it would not proceed with the proposed business venture.
21   (FAC ¶ 29, ECF No. 18.)  In early 2011, however, Defendant publicly announced new
22   indices emphasizing volatility (*id.* at ¶ 31), which adopt Plaintiff's confidential and trade
23   secret information (*id.* at ¶ 41).

24       Prior to Defendant's announcement of its own indices, Christopher Siriani,
25   Plaintiff's then-Director of Operations and Chief Compliance Officer (Decl. of Christopher
26   Siriani (Siriani Decl.) ¶ 1, ECF No. 212-1), filed a Certificate of Cancellation with the
27   Delaware Secretary of State in December 2010 to dissolve Plaintiff (Decl. of Eric B. Evans
28   (Evans Decl.) Ex. 30, ECF No. 183-31).  Pete Johnson filed a Certificate of Correction on

13-CV-2856 JLS (RBB)

November 26, 2013, which claimed that the Certificate of Cancellation filed by Mr. Siriani was null and void because it "was filed without consent or approval of the board of managers." (Evans Decl. Ex. 34, ECF No. 183-35.)

## II.   Procedural Background

Plaintiff filed its initial complaint on December 6, 2013, alleging causes of action for trade secret misappropriation, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of confidence, fraud, and constructive fraud. (ECF No. 1.) On July 7, 2014, Plaintiff filed its FAC, dropping its cause of action for breach of confidence. (ECF No. 18.) Defendant answered the FAC on January 16, 2015, raising affirmative defenses of unclean hands, waiver, and estoppel. (Answer, ECF No. 31.)

On January 7, 2016—just prior to the discovery cut-off (*see* ECF No. 75) and after the deadline to amend the pleadings (*see* ECF No. 41)—Defendant filed the instant Motion to Amend (ECF No. 86). The Court declined to expedite the hearing and shorten the briefing schedule as Defendant requested. (*See* ECF Nos. 87, 95.)

On February 4, 2016, Defendant asked the Court to modify the scheduling order to extend, among other things, the discovery cut-off. (*See* ECF No. 125.) While that motion was pending, the parties filed their MSJs and *Daubert* Motions (*see* ECF Nos. 133, 134, 154, 159, 160) and Defendant filed the instant MTD (*see* ECF No. 173). On April 28, 2016, Magistrate Judge Ruben B. Brooks granted Defendant leave to take an additional fourteen hours of deposition testimony but otherwise declined to extend any of the remaining case deadlines. (*See* ECF No. 225.) After the Court vacated the final pretrial conference on May 16, 2016 (*see* ECF No. 245), Magistrate Judge Brooks vacated all remaining case management deadlines (*see* ECF No. 246). Defendant has since challenged Magistrate Judge Brook's April 28, 2016 order. (*See* ECF No. 253.)

## MOTION TO DISMISS

## I.   Legal Standard

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*,

718 F.2d 964, 965 (9th Cir. 1983).  Because the issue of standing pertains to the subject matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)").  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction."  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)).  "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction."  *Id.* (citing *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir. 1990)).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  In evaluating such a challenge, the court accepts the factual allegations in the complaint as true.  *See Miranda v. Reno,* 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).  In contrast, where the defendant challenges the factual basis underlying the allegations, the court need not accept the allegations as true and may instead make factual determinations.  *White*, 227 F.3d at 1242.  "In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary."  *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  When making such a ruling, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White,* 227 F.3d at 1242).
/ / /

## II.   Analysis

Defendant first asks the Court to dismiss this case because Plaintiff "had long since dissolved and no longer existed as a legal entity" at the time Plaintiff filed suit and "its subsequent efforts in an attempt to revive itself had no legal effect," preventing this Court from exercising jurisdiction.  (MTD Mem. 6, ECF No. 188; *see also id.* at 14–19.)  The Court concludes, however, that the certification from the Delaware Secretary of State that Plaintiff "is duly formed under the laws of the State of Delaware and is in good standing and has a legal existence so far as the records of this office show" (*see* Decl. of Benjamin J. Everton (Everton Decl.) Ex. S, ECF No. 215 at 37) is dispositive, *see Admin. Servs. of N. Am., Inc. v. Hartford Fid. & Bonding Co.*, No. CIV.A. H-03-3949, 2005 WL 1994277, at *2 (S.D. Tex. Aug. 16, 2005) ("Because [plaintiff] has provided . . . certification of its 'Good Standing' from the Delaware Secretary of State, the Court is satisfied that [plaintiff] has the capacity to pursue this lawsuit under Delaware law.").  The Court therefore **DENIES** Defendant's MTD to the extent it seeks to dismiss this entire action for lack of subject-matter jurisdiction.

Alternatively, Defendant requests that the Court dismiss Plaintiff's trade secret claim, arguing that "the alleged trade secrets belong to [Plaintiff]'s principal, John Freeman, and not [Plaintiff], so [Plaintiff] lacks standing to bring its trade secret claim." (MTD Mem. 6, ECF No. 188; *see also id.* at 20–25.)  Although "California courts have not yet addressed whether ownership of the trade secret is *necessary* to establish standing," *Memry Corp. v. Ky. Oil Tech., N.V.*, No. C-04-03843 RMW, 2006 WL 3734384, at *7 (N.D. Cal. Dec. 18, 2006) (citing *State Farm Mut. Auto. Ins. Co. v. Wier*, No. A101791, 2004 WL 2988429, at *12 n.15 (Cal. Ct. App. Dec. 27, 2004) (unpublished), the Court concludes that Plaintiff has adequately demonstrated ownership of the trade secrets in question.

Here, Mr. Freeman claims that he "received a copy of the Freeman Employee Handbook and agreed to its terms when [he] began [his] employment at Freeman." (Freeman Decl. ¶ 19, ECF No. 212-2.)  The Freeman Employee Handbook expressly

provides that "[a]ny and all inventions created, in whole or in part, during an employee's work hours, or from the use of the company's equipment or facilities, is a 'work for hire' and the property of the company." (Freeman Decl. Ex. J at 68, ECF No. 212-4 at 26.) The same is true of "any suggestions, innovations, inventions, or other matters created by an employee on work time or with company tools or property." (Freeman Decl. Ex. J at 67, ECF No. 212-4 at 25.) Mr. Freeman wrote the White Paper while an employee of Plaintiff, using an office, computer, and subscription services provided by Plaintiff. (Freeman Decl. ¶ 9, ECF No. 212-2.)

Under the language of the Freeman Employee Handbook, "the contract could not be more clear in allocating possession of the trade secret information to [Plaintiff]." *State Farm*, 2004 WL 2988429, at *12. Moreover, despite Defendant's attempt to classify the handbook as an "agreement to assign" (*see* MTD Reply 11, ECF No. 237), no further act was required to transfer title of the trade secrets from Mr. Freeman to Plaintiff, *see, e.g.*, *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) (distinguishing between future and present assignments of patent rights); *Venture Corp. v. Barrett*, No. 5:13-CV-03384-PSG, 2015 WL 8479475, at *4 (N.D. Cal. Dec. 9, 2015) (overturning jury's forfeiture finding where "[t]he Inventions Agreement assignment clause uses present tense language," meaning that "interest in the three inventions was assigned to [plaintiff] 'by operation of law'"); *Dominion Assets LLC v. Masimo Corp.*, No. 12-CV-02773-BLF, 2014 WL 2937058, at *5 (N.D. Cal. June 27, 2014) ("The unambiguous language of the assignment provision makes assignment automatic . . . ."). Accordingly, Plaintiff has sufficiently demonstrated ownership of the trade secrets and standing to bring its trade secret cause of action.

The Court therefore **DENIES** Defendant's MTD. (ECF No. 173.)

## MOTION TO AMEND

### I.   Legal Standard

"After a scheduling order has been issued setting a deadline to amend the pleadings, and a party moves to amend the pleadings after the deadline, the motion amounts to one to

amend the scheduling order and thus is properly brought under Rule 16(b)."  *U.S. Bank Nat'l Ass'n v. Wayman*, No. 13-CV-02203-BAS BLM, 2015 WL 5772730, at *5 (S.D. Cal. Sept. 30, 2015) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 605, 608 (9th Cir. 1992).  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Johnson*, 975 F.2d at 609.  As part of this inquiry,

> the movant may be required to show . . . : (1) that she was diligent in assisting the Court in creating a workable Rule 16 order . . . ; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference . . . ; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order . . . .

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citations omitted). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Johnson*, 975 F.2d at 609 (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).  "If th[e moving] party was not diligent, the inquiry should end."  *Id.*

If, however, the moving party shows good cause, the party must then demonstrate that amendment is proper under Rule 15(a).  *Id.* at 608 (quoting *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).  Under Rule 15(a), leave to amend is generally granted unless the court harbors concerns "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

/ / /

## II.    Analysis

Defendant seeks to amend its answer under Rule 15(a) to "supplement[] its existing affirmative defense of unclean hands and add[] an affirmative defense of setoff based on . . . newly-discovered information." (Mot. to Amend Mem. 2, ECF No. 86-1.)  Specifically, Defendant's original unclean hands affirmative defense was based on Plaintiff's allegedly improper incorporation of Barra, LLC's confidential information into the White Paper. (*See* Answer 13, ECF No. 31.)  Defendant's proposed amendment claims that Plaintiff "also improperly relied on and incorporated *[Defendant]'s* proprietary information in violation of [Plaintiff]'s licensing agreements with [Defendant]." (Mot. to Amend Mem. 3, ECF No. 86-1.)  Defendant also claims that "[Plaintiff]'s breach of its contractual obligations with respect to [Defendant]'s proprietary float weights also gives rise to an additional affirmative defense of setoff." (*Id.* at 7.)

Although the parties' briefing addresses the Rule 15(a) factors (*see* Mot. to Amend Mem. 8–11, ECF No. 86-1; Amend Opp'n 7–15, ECF No. 97; Amend Reply 2–11, ECF No. 156), Magistrate Judge Brook's scheduling order provided that "[a]ny motion . . . to amend the pleadings . . . shall be filed and heard on or before <u>October 5, 2015</u>" (ECF No. 41 at 3 (emphasis in original)).  This deadline was not affected by any subsequent modifications.  (*See* ECF Nos. 66, 75.)  Because Defendant did not file the instant Motion to Amend until January 7, 2016, the motion is properly analyzed under Rule 16(b) rather than Rule 15(a).  *See Johnson*, 975 F.2d at 607–08.  Accordingly, the controlling inquiry is Defendant's diligence in seeking the proposed amendments.  *Id.* at 609.

Upon consideration of the relevant factors, the Court concludes that Defendant has failed to establish the requisite good cause.  Importantly, Defendant "has failed to move to amend the scheduling order."  *See Wayman*, 2015 WL 5772730, at *9.  "A court may deny as untimely a motion for leave to amend after a scheduling order deadline has passed, simply because the party seeking an extension of time did not request a modification of the scheduling order as well."  *Id.* at *9 n.7 (citing *Johnson*, 975 F.2d at 608).  Additionally, "the Court highlights that [Defendant] filed this motion well after the scheduled deadline

1   to amend the pleadings and one month before the discovery cut-off date." *See id.* at *9.

2   Finally, despite claiming to have been first put "on notice" of the facts underlying the

3   proposed amendments on November 19 or 20, 2015 (*see* Amend Reply 6, ECF No. 156

4   (citing Supplemental Decl. of Eric B. Evans (Supp. Evans Decl.) ¶ 7, ECF No. 156-1)),

5   Defendant neither included a request to modify the already-expired deadline to amend in

6   its December 3, 2015 joint motion (*see* ECF No. 72) nor mentioned its intention to seek

7   leave to amend at any of the multiple proceedings held before Magistrate Judge Brooks in

8   December 2015 (*see* ECF Nos. 76, 78, 80, 84). Such "carelessness is not compatible with

9   a finding of diligence . . . ." *See Johnson*, 975 F.2d at 609 (collecting cases).

10   While the inquiry should end there, *see id.*, even if the Court were to address the

11   Rule 15(a) factors, the Court's conclusion would not change. Plaintiff has carried its

12   burden of demonstrating that the proposed amendments are not warranted. *See, e.g.*,

13   *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, No. C14-0719JLR, 2015 WL

14   4641714, at *3 (W.D. Wash. Aug. 4, 2015) ("[T]he party opposing amendment has the

15   burden of showing that amendment is not warranted.") (citing *DCD Programs, Ltd. v.*

16   *Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *Richardson v. United States*, 841 F.2d 993,

17   999 (9th Cir. 1988)); *Angel Jet Servs., L.L.C. v. Raytheon Health Benefits Plan*, No. 2:10-

18   CV-01385-PHX, 2011 WL 744917, at *2 (D. Ariz. Feb. 25, 2011) ("'[T]he party opposing

19   amendment bears the burden of showing prejudice,' futility, or one of the other permissible

20   reasons for denying a motion to amend.") (quoting *DCD Programs*, 833 F.2d at 187).

21   First, Plaintiff argues that Defendant unduly delayed in filing its Motion to Amend

22   because Defendant had learned of all the relevant facts at least six months before filing its

23   original Answer. (*See* Amend Opp'n 8–11, ECF No. 97.) Specifically, Plaintiff argues

24   that the document Defendant cites to support its allegation that Plaintiff used Defendant's

25   float weights in the White Paper is an email dated January 14, 2010 from Mr. Freeman to

26   an employee of Defendant, meaning that "five years before [Defendant] filed its Answer,

27   [Defendant] possessed the information necessary to form the allegation that [Plaintiff] used

28   [Defendant]'s float weights." (*Id.* at 9.) Defendant counters that "*[the employee]'s* receipt

of the Float Weights Email in 2010 does not establish *Russell's* knowledge of the facts reflected in that email." (Amend Reply 4–5, ECF No. 156.)  Instead, Defendant argues, it was not put on notice that Plaintiff may have improperly used Defendant's confidential information until late November 2015, at the employee's pre-deposition meeting and deposition.  (*Id.* at 6.)

As discussed above, Defendant was not as diligent as it attempts to portray itself. Moreover, Defendant itself produced the relevant email to Plaintiff on August 20, 2015 (*see* Everton Decl. ¶ 5, ECF No. 97-1), three months before Defendant claims to have been put on notice and nearly five months before filing the instant motion.  It therefore seems likely that Defendant was "on notice" earlier than it asserts.  Even assuming, however, that Defendant did not learn of the facts relevant to its proposed amendments until late November 2015, Defendant has offered no explanation for its delay in filing the instant motion, particularly in light of the then-imminent discovery cut-off.  Defendant's undue delay in seeking amendment weighs against granting the instant motion.  *See, e.g.*, *Demoura v. Ford*, No. 1:09-CV-01344-LJO, 2012 WL 1898905, at \*10 (E.D. Cal. May 23, 2012) (denying motion to amend where "Plaintiffs waited nearly two months . . . to request amendment" and "failed to explain why they delayed in seeking amendment").

Second, Plaintiff claims that it will be unduly prejudiced by the amendments Defendant seeks, which greatly change the parties' positions in the litigation, require additional discovery thereby delaying the proceedings, and are made after many key witnesses have been deposed.  (*See generally* Amend Opp'n 11–15, ECF No. 97.)  These arguments are not without merit.  While it is true that Defendant previously asserted an unclean hands defense (*see* Amend Reply 8, ECF No. 156), the proposed amendment— which adds new allegations concerning Plaintiff's allegedly improper incorporation of Defendant's rather than a third party's confidential information—will require additional discovery (*see* Mot. to Amend Mem. 11, ECF No. 86-1).  Because Defendant filed the Motion to Amend so close to the discovery cut-off—which has since expired—Plaintiff does not have "ample time to conduct additional discovery." (*See* Amend Reply 9–10,

ECF No. 156 (emphasis omitted).)  Additionally, the parties would likely need to rebrief Plaintiff's MSJ, which seeks summary adjudication of Defendant's affirmative defenses (*see* Pl.'s MSJ, ECF No. 133), if the Court were to grant the instant motion.

> While the Court is mindful of its interest in providing [Defendant] with an opportunity to fully litigate any [affirmative defenses it] may have against [Plaintiff], the prejudice to [Plaintiff] that would result from allowing [Defendant] to overhaul [its affirmative defenses] at the conclusion of the discovery period and after [the parties] have moved for summary judgment is sufficient to deny leave under Rule 15.

*Quan v. San Francisco Police Dep't*, No. C 10-01835 MEJ, 2011 WL 2470477, at *6 (N.D. Cal. June 21, 2011) (citing *Foman*, 371 U.S. at 182).

Because Defendant has failed to show good cause under Rule 16(b) or that amendment is proper under Rule 15(a), the Court **DENIES** Defendant's Motion to Amend. (ECF No. 86.)

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's MTD (ECF No. 173), **DENIES** Defendant's Motion to Amend (ECF No. 86), and **SETS A HEARING** on the parties' MSJs (ECF Nos. 133, 134, 160) and *Daubert* Motions (ECF Nos. 154, 159) for August 18, 2016 at 1:30 p.m. in Courtroom 4A.

**IT IS SO ORDERED.**

Dated:  July 18, 2016

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge